(No. 43725.

METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Martin Dashiel, Appellee.)

*Opinion filed October 4, 1971.*

KLOHR, BRAUN, LYNCH & SMITH, of Chicago, (MARK A. BRAUN, of counsel,) for appellant.

J. MICHAEL MADDA, of Chicago, (CHARLES WOLFF, of counsel,) for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Metropolitan Sanitary District of Greater Chicago, hereafter called employer, appeals from the judgment of the circuit court of Cook County reversing the decision of the Industrial Commission and reinstating the award of the arbitrator. Our Rule 302(a) provides for direct appeal to this court.

It is the employer's contention that no compensation should be awarded because there is no proof to connect the claimed disability with a fall which the parties stipulated occurred while the employee was working. Because of the issue raised it is necessary to review the evidence in some detail.

On January 17, 1966, Martin Dashiell, the employee, slipped on some ice while working and fell onto his back, striking his head on the ice. He was sent by one of his supervisors to a medical clinic, where X rays were taken of his back and head. He was given some medication and sent home. He received heat treatment to his back over the next several days at the clinic, but he continued to experience pain in his legs, and dizziness. He returned to work; but, because of his continued complains he was sent to Dr. Lee Strohl, who examined him on February 15,

1966. Dr. Strohl found pain over Dashiell's right sacroiliac area and limitation of motion of approximately 25% on the left. In his report he concluded that Dashiell had sustained "acute low back pain as a result of his fall on the ice (on Jan. 17) and had a residual tenderness over the right sacroiliac and lower lumbar spine with muscle spasm and rigidity. There is undoubtedly some exacerbation of his osteo arthritic changes in his lumbo sacral spine." Dr. Strohl also found a small left inguinal hernia present and a right relaxed ring. He expressed the opinion that Dashiell's spending three to six weeks in a warm, dry climate would relieve him of all symptoms and residual difficulties from his fall.

On January 30, 1966, after the fall at work but prior to seeing Dr. Strohl, Dashiell was involved in an automobile accident. He testified his car was struck lightly from the rear, that he was not personally injured, that he received no medical attention, and that he had completely forgotten the incident and saw no reason to mention it to anyone at his place of employment. He did not tell Dr. Strohl about it. A report of accident and claim, signed by him and given to the adjuster investigating the auto accident, stated that he suffered a sore neck and back in the injury and was being treated by Dr. Strohl. It was dated February 18, 1966. Dashiell denied he had given this information to the adjuster and testified that, when he signed the form, the only information on it was his name and address. Following Dr. Strohl's advice, he went to Arizona for about one month. He then returned to work but because his complaints persisted, remained on the job only one week. Dr. Strohl referred him to Dr. Coblens, who treated him until September, 1966, with heat and medications. He testified he continued to experience pain in his neck, right shoulder, back, and down his legs. He returned to work on July 1, 1966, and continued to work regularly until April 21, 1967, on which date he was unfortunate enough to be in a supermarket that was struck

by a tornado. He was knocked unconscious and for approximately 30 minutes was buried beneath some rubble. He suffered bruises to his legs and was off work for several weeks. During this period he was treated by Dr. Janda.

On June 1 and November 6, 1967, Dashiell was examined by Dr. Michael Reiffel, who testified that he suffered a "disturbance of the arthritic changes, with some ligamentous damage, causing spinal nerve root irritation, resulting in sciatic involvement of both the right and left extremities." His opinion was that the condition is permanent. Cross-examination examination indicated Dr. Reiffel had never been told by Dashiell about either the auto accident or the tornado incident. He believed the history and treatment indicated the arthritic condition had been changed by some trauma, and could be disturbed by any type of trauma.

Dashiell testified that he had been free of any symptoms and had lost no time from work prior to January 17, 1966, and since then he has suffered pain in his legs.

Dr. W.W. Patrick, who examined petitioner for respondent, reported that he could find no objective symptoms to indicate a need for any treatment and in his opinion petitioner had full function of both legs.

Dashiell also testified that he noticed some pain in his left groin shortly after he fell but began to pay attention to it only when it bothered him later as he walked around. He was examined by Dr. Strohl on September 19, 1967, at which time he was suffering increased pain. Dr. Strohl found a left, inguinal hernia, much larger than when he initially examined petitioner following his fall. Dr. Strohl recommended surgery, which was performed by Dr. Janda on October 10, 1967. The employer denied Dashiell's request to pay for this surgery.

The arbitrator awarded nine weeks for temporary total disability, a 10% permanent disability to each leg,

and reimbursement for medical costs incurred in the correction of the hernia. On review the Industrial Commission set aside the award of the arbitrator, denied the claim for temporary total disability and for medical expenses, and awarded Dashiell compensation for 15% loss of use of each leg. The circuit court reversed and set aside the decision of the Commission and ordered that the decision of the arbitrator be reinstated to stand as the decision of the Commission.

In *Granite City Steel Co. v. Industrial Com., 39 Ill.2d 178,* this court, at page 190, said, "The resolution of factual matters as to the extent of the employee's injury is for the Commission to determine. *(Electro—Motive Div., General Motors Corp. v. Industrial Com., 411 Ill. 224.)* When the medical testimony is in dispute and there is evidence in the record which, considered by itself, sustains the finding of the Commission, that finding will not be disturbed unless we can say that it is contrary to the manifest weight of the evidence."

In our opinion the evidence is sufficient to sustain the award of 15% of the loss of use of each leg. *Jewel Tea Co. v. Industrial Com., 39 Ill.2d 180.*

With respect to the denial of compensation for expenses incurred because of the hernia, we note that section 8 of the Workmen's Compensation Act (Ill.Rev. Stat. 1969, ch. 48, par. 138.8(d)) enumerates certain matters which a petitioner must prove to sustain an award of compensation for hernia. We are unable to say that the findings of the Industrial Commission with respect to the hernia are contrary to the manifest weight of the evidence.

The judgment of the circuit court of Cook County is reversed, and the decision of the Commission is reinstated.

*Judgment reversed; decision reinstated.*